UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **ADAM APPEL**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:05-cv-772 SNL |
| ) | |
| **THE CITY OF ST. LOUIS**, *et al.*,, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This is before the Court on Plaintiffs' Motion to Compel (#82), filed January 30, 2007. Plaintiffs seek to require the production of five documents:

(1) Training Handout: baton apparatus technique; mobile field force tactics; Direct Action Device Apparatus Response Team Techniques
(2) Training Handout: After Action Report, International Society of Animal Genetics Conference, Minneapolis Police Department, July 21-26, 2000
(3) Training Handout: Civil Disturbance and Criminal Tactics of Protest Extremists, August 2001
(4) Training Handout: United States Capital Police, Photos, Powerpoint re: Incidents of Activist Protest Violence, intervention in law enforcement
(5) Internal Affairs Investigation materials following May 2003 response

Defendants object to the production of all five documents on grounds of law enforcement privilege, citing the Missouri Sunshine Act ("MSA") and the Freedom of Information Act ("FOIA"). Defendants also object to the production of the Internal Affairs Investigation on grounds of confidentiality under Sections 610.010 and 610.021 of the Missouri Revised Statutes. The Court conducted an *in camera* review of the documents, and is prepared to rule on Plaintiffs' Motion.

Defendants claim that these documents should be protected from discovery under the law enforcement privilege, FOIA, and MSA. Although neither MSA nor FOIA govern the Court's

analysis of privilege,[1] the federal and state statues provide guidance for the Court's determination. Under the MSA, if a record will "disclose techniques, procedures or guidelines for law enforcement investigations or prosecutions," the record should be closed. Mo. Rev. Stat. § 610.100.3.  And a closed investigative report, which is a record prepared by a law enforcement agency inquiring into a crime or suspected crime, should be disclosed only upon a finding that "the benefit to the person bringing the action ... outweighs any harm to the public, to the law enforcement agency or any of its officers, or to any person identified in the investigative report in regard to the need for law enforcement agencies to effectively investigate and prosecute criminal activity." Mo. Rev. Stat. § 610.100.5.  Under FOIA, records compiled for law enforcement purposes are privileged, but only to the extent that the records

> (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7).  Governmental bodies seeking to restrict the disclosure of documents under FOIA have the burden of showing that the documents fall within a statutory exception. *Miller v. Dep't of Agriculture*, 13 F.3d 260, 262-63 (8th Cir. 1993).  The exceptions "must be narrowly

---

[1] FOIA only applies to federal agencies.  *See* 5 U.S.C. § 552(a).  And because this action is before the Court on federal question jurisdiction, State law does not govern the privilege determination.  Fed. R. Evid. 501; *Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94, 101 (D. Md. 1995).

2

construed," because "these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.* (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

At common law, courts recognize the existence of a law enforcement privilege. This privilege can be equated to that created by FOIA. The purpose of this privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *Jones v. City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003). If "the public interest in nondisclosure" outweighs "the need of the particular litigant for access to the privileged information," the privilege will prevent the disclosure of law enforcement investigatory files. *Raz v. Mueller*, 389 F. Supp. 2d 1057 (W.D. Ark. 2005) (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C. Cir. 1984)).

The Court has reviewed the government's affidavit and utilized an *in camera* review of the documents. *See Cleary v. Fed. Bureau of Investigation*, 881 F.2d 421, 424 (8th Cir. 1987). During its review of the documents in question, the Court weighed "the public interest in nondisclosure" against "the need of the particular litigant for access to the privileged information," to determine whether privilege prevents disclosure of the files. *Raz v. Mueller*, 389 F. Supp. 2d 1057 (W.D. Ark. 2005) (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C. Cir. 1984)). Secrecy is justified if disclosure to the public would "significantly impede the enforcement process." *Cox v. United States Dep't of Justice*, 576 F.2d 1302, 1307 (8th Cir. 1978) (quoting *Hawkes v. Int'l Rev. Serv.*, 467 F.2d 787 (6th Cir. 1972)). "Enforcement is adversely affected only when information

is made available which allows persons simultaneously to violate the law and to avoid detection." *Id.*

**(1)     Training Handout: baton apparatus technique; mobile field force tactics; Direct Action Device Apparatus Response Team Techniques (Docs. 710-755)**

These documents contain detailed descriptions of a city's confidential law enforcement tactics. Disclosure of this information would significantly impede the law enforcement process. Plaintiffs' needs are significantly outweighed by the public interest. Accordingly, Defendants properly asserted privilege. Plaintiffs are not entitled to these documents.

**(2)     Training Handout: After Action Report, International Society of Animal Genetics Conference, Minneapolis Police Department, July 21-26, 2000 (Docs. 756-808)**

This information was made public by the City of Minneapolis on their website. Accordingly, there is no secrecy to protect. *See* http://www.ci.minneapolis.mn.us/citywork/police/stats/isag.html. Plaintiffs are entitled to these documents.

**(3)     Training Handout: Civil Disturbance and Criminal Tactics of Protest Extremists, August 2001 (Docs. 809-895)**

These documents are labeled "Unclassified / Sensitive – Dissemination Restricted to Public Safety Agencies Only." During the course of this litigation, the Police Department stated that certain objects seized from a Defendant's residence corroborated concerns that the demonstration would be non-peaceful. Plaintiffs allege that these documents relate to the formation of these concerns. The documents contain descriptions of civil disobedience practices, and give no information as to

4

government response tactics. Included in this handout are articles written by groups who encourage civil disobedience. These documents were compiled by the government, and are disseminated by these groups through the internet, bookstores, and pamphlets. Accordingly, Defendants will produce Documents 809-895.

**(4)     Training Handout: United States Capital Police, Photos, Powerpoint re: Incidents of Activist Protest Violence, intervention in law enforcement (Docs. 912-1176)**:

Upon review of the documents, the Court finds that these documents should remain confidential. The documents were created by the United States Capitol Police, and contain information that, if disclosed, would significantly impede the law enforcement process. Plaintiffs' needs are significantly outweighed by the public interest.

**(5)     Internal Affairs Investigation materials following May 2003 response**:

Defendants claim that these documents should be protected from discovery under the law enforcement privilege, FOIA and Sections 610.100.3, 610.100.5, 610.010, and 610.021 of the Missouri Revised Statutes. Defendants make no claim of work product privilege, nor do they dispute the relevancy of these documents. Although this is before the Court on federal question jurisdiction, given the dearth of federal law on point, and Missouri's substantial interest in the privacy of its own internal police files, the Court will look to Missouri law for guidance.[2]

---

[2]Federal Rule of Evidence 501, states that privilege is to be "governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience." The phrase "reason and experience" allows courts in federal question cases to "choose to apply state privilege law by analogy or as a matter of comity." *LeMasters v. Christ Hosp.*, 731 F. Supp. 188, 189 (S.D. Ohio 1991) (citing *United States v. King*, 73 F.R.D. 103 (E.D.N.Y. 1976)).

Initially, the Court will address Defendants' claims of confidentiality. In *Guyer v. City of Kirkwood*, 38 S.W.3d 412 (Mo. banc. 2001), the Supreme Court of Missouri examined the effect of the MSA on internal investigative files. The city received a citizen complaint, alleging that a police officer engaged in misconduct. The Internal Affairs bureau investigated the complaint, and concluded that the complaint was unfounded. The police officer requested a copy of the report, including the identity of the complainant, but the city refused. *Id.* at 413. The police officer sought production of the file under Missouri Revised Statute Section 610.100.2, which provides:

> Each law enforcement agency of this state, of any county, and of any municipality shall maintain records of all incidents reported to the agency, investigations and arrests made by such law enforcement agency. All incident reports and arrest reports shall be open records. Notwithstanding any other provision of law other than the provisions of subsections 4, 5 and 6 of this section or section 320.083, RSMo, investigative reports of all law enforcement agencies are closed records until the investigation becomes inactive.

Mo. Rev. Stat. § 610.100.2. Under the MSA, once the investigation becomes inactive, investigative reports become open records. *Guyer*, at 414. The city sought to keep the internal file confidential pursuant to Section 610.021(3) and (13). Subsection 3 requires that records related to the hiring, firing, or disciplining or particular employees remain confidential. And subsection 13 provides that "individually identifiable personnel records, performance ratings or records pertaining to employees" shall remain confidential. Mo. Rev. Stat. § 610.021(13). After examining the interplay between the two statutory sections, the Missouri Supreme Court focused on introductory language to Section 610.021, which allowed for confidentiality *unless* "disclosure is otherwise required by law." Because of this language, the court found that the requirements of Section 610.100.2 trumped the allowance of confidentiality in Section 610.021. Therefore, the fact that the file surrounded an internal investigation into a police officer's misconduct did not restrict disclosure. The court held that, where an internal investigative report is directed towards alleged criminal conduct, the record becomes an

6

open record once the investigation is completed. *Guyer*, at 414-415. *See also State ex rel. Springfield v. Brown*, 181 S.W.3d 219 (Mo. Ct. App. 2005) (defendant in criminal action who filed complaint against arresting officers allowed to obtain the internal investigative report and other citizen complaints against those officers through discovery).

Plaintiffs' complaint alleges criminal conduct, thus the findings in *Guyer* are applicable, and Defendants' claim of confidentiality under Section 610.021 is misplaced. According to the Missouri Supreme Court, the general principles of open governance set forth in Section 610.100.2 trump the allowance for confidentiality in Section 610.021. Defendants argue that *Guyer* is distinguishable because it involved a police officer attempting to obtain an internal investigative file as to his own conduct, whereas in this case, Plaintiffs are attempting to obtain the investigative report surrounding their own allegations. However, *Guyer* contained no limiting language to allow for such a conclusion. Accordingly, the Court sees no cause to limit the holding in *Guyer* to those circumstances in which a person requests his own investigative file. Defendants also request that the Court follow *St. Louis County v. Block*, 622 S.W.2d 367 (Mo. Ct. App. 1981), for the proposition that:

> confidentiality [of internal investigatory files] is essential to protect the integrity of the police department and to maintain an effective disciplinary system. The files contain hearsay and unverified information, some of it obtained from confidential sources. Witnesses have been told their interviews were confidential. Systematic disclosure would inhibit officers and citizens from divulging information in the future.

*Id.* at 370-71 (quoting *Wilson v. McNeal*, 575 S.W.2d 802 (Mo. Ct. App. 1978)). However, this argument also fails. *Block* rested its findings on *Wilson*, which was overruled by *Guyer*. *Guyer* stated: "to the extent that *Wolfskill* and *Wilson* can be read to hold that records of internal investigations into criminal misconduct may be closed under section 610.021, those cases are

7

inconsistent with the current version of section 610.100, and are no longer to be followed." *Guyer*, 37 S.W.3d at 414. Accordingly, the investigative files are not entitled to confidentiality under Section 610.021.

In addition, the Court finds that the general law enforcement privilege, and the related FOIA and MSA sections, are inapplicable to these files. The purpose of this privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *Jones v. City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003). These files do not disclose any confidential law enforcement techniques or procedures, any problems created by statements by confidential sources can be easily remedied through the redaction of names, and there is no ongoing investigation. The files do contain hearsay and unverified information. However, this does not affect Plaintiffs' ability to obtain the file through discovery. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Accordingly, these documents are not privileged. Defendants will produce the internal affairs documents.

In sum, Defendants are ordered to produce: Training Handout: After Action Report, International Society of Animal Genetics Conference, Minneapolis Police Department, July 21-26, 2000 (Docs. 756-808); Training Handout: Civil Disturbance and Criminal Tactics of Protest Extremists, August 2001 (Docs. 809-895); and Internal Affairs Investigation materials following May 2003 response. If Defendants wish these documents to be subject to a protective order, including the

8

redaction of some information, the Court will entertain such a request. Parties should discuss the possibility of a protective order, and submit a proposed joint order to the Court. If parties cannot agree to a joint protective order, each shall submit one for review by the Court, and the Court will enter a protective order of its own. The proposed protective order(s) shall be submitted on or before March 26, 2007.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel be and is **GRANTED** in part and **DENIED** in part, in accordance with this Order.

Dated this 19th day of March, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE